[No. 154. Decided February 19, 1891.]

*In the Matter of the Application of* JOHN G. LYBARGER
*for a Writ of Habeas Corpus.*

HABEAS CORPUS — VOID JUDGMENT — CONSTITUTIONAL LAW.

The statute providing that no court shall inquire into the legality of any judgment or process whereby the party is in custody, when such custody is upon any process issued on any final judgment of a court of competent jurisdiction, precludes the supreme court, in *habeas corpus* proceedings, from questioning the judgment of a court of general jurisdiction fair upon its face.

Such statute does not transgress the constitutional provision securing the right to the writ of *habeas corpus.*

*Original Proceedings in Habeas Corpus.*

*Marshall K. Snell,* and *Heilig & Heuston,* for petitioner.

*W. C. Jones,* Attorney-General, and *Charles Bedford,* for respondent.

The opinion of the court was delivered by

Hoyt, J. — Upon the return of the officer to the order to show cause issued herein and the hearing had thereon, two questions are presented for our determination — (1) as to the power of the legislature to provide for the prosecution of offenses, committed before we became a state, by information; (2) as to whether or not the court, in *habeas corpus* proceedings, will go behind the final judgment of a court of competent jurisdiction for any purpose whatever. We will discuss the second question first. Our statute provides that no court shall inquire into the legality of any judgment or process whereby the party *is* in custody, when such custody is upon any process issued on any final judgment of a court of competent jurisdiction; and if the words "final judgment" mean what they say, it would seem to preclude the issuing of the writ in the case at bar. But it is contended by petitioner that these words refer only to judgments in cases where the court pronouncing it had jurisdiction of the subject-matter of that particular case, and of the person of the defendant; that all other judgments are void, and therefore nullities; that, however general the jurisdiction of the court might be, it would not be a court of competent jurisdiction as to that particular judgment, unless it had jurisdiction of the subject-matter of the suit and of the person of the defendant. With this contention of the petitioner we should probably agree, when applied to judgments of courts of special or limited jurisdiction, for the reason that the judgments of such courts do not even *prima facie* prove their jurisdiction to pronounce it; and, it being necessary that the facts showing jurisdiction should appear before the judgment is entitled to any standing, when these facts are wanting there is substantially no judgment. A judgment of a court of general jurisdiction, however, stands upon an entirely different footing. Such a judgment *prima facie* proves itself, and it is not necessary to aid it by proof of

any jurisdictional facts. To authorize any of the steps that may be taken to enforce judgments of this kind it is only necessary to produce the judgment itself, as all jurisdictional facts will be presumed until the contrary appears. It is true that, when it is made to appear affirmatively by the record in any particular case that the facts necessary to jurisdiction did not exist, the presumption as to jurisdiction will be overcome; but this cannot make a writing in the form of a judgment, which, until such want of jurisdiction is made affirmatively to appear, is binding upon the whole world, an absolute nullity. The fact that it is the judgment of a court of general jurisdiction makes it *prima facie* valid, and that which is even *prima facie* valid cannot be said to be a nullity. When the officer returns as his authority for holding a prisoner a commitment which shows upon its face that such person is committed by a court of general jurisdiction in pursuance of its final judgment for a crime triable by such court, we think he has brought himself within the provisions of our statute, and that the courts are, by the terms thereof, precluded from inquiring further into the cause of detention ; and that neither by having the record set out in the petition, nor by bringing it here by *certiorari*, can this court look therein to see whether or not the court had jurisdiction in that particular case. To hold that we could investigate this question in the face of the statute would be to hold that the judgment was an absolute nullity for all purposes, which we have seen would not be reasonable, and would lead to results which could not be tolerated without an entire change of practice as to the presumptions in favor of the judgments of such courts. If such judgments are nullities, then they can be good for no purpose; and every officer attempting to enforce them would be guilty of trespass or false imprisonment. Yet, so far as we know, no court has thus punished officers for enforcing the judgment of a court of general jurisdiction fair upon its face.

But petitioner contends that if the statute must be construed as above, it is unconstitutional; his claim being that the writ of *habeas corpus* is a high prerogative writ known to the common law, and that it is this common-law writ that is secured to us by the constitution of the United States and of this state; and further, that at the common law said writ was used to inquire as to the jurisdiction of the court which rendered the final judgment upon which the petitioner was held. With the first part of this claim we find little fault though it may need qualification; but as to the second part we cannot agree that the scope of this writ was as contended for until long after the date when the statute of England ceased to be a part of our common law; and even at this time it is doubtful if the practice there goes to the extent above claimed, without some important qualifications. Prior to the passage of the act of 56 Geo. III, the return of the officer was absolutely conclusive; and if he returned that he held the petitioner by virtue of process issued by a court of competent jurisdiction, that was the end of the inquiry, and, however false this return might be, the only remedy was by an action for false return. This being the law and practice in England at the time we took therefrom our common law, it cannot be successfully contended that our statute conflicts therewith, for under it, as we have seen, the return that the petitioner was held by any process or judgment good upon its face not only precluded inquiry into the validity of such process or judgment, but also precluded inquiry as to the facts of his being held by such process or judgment at all. In fact, under the English common law, as we took it, the return of the officer was absolutely conclusive. See Church, Hab. Corp., §§ 138, 221. Many cases have been cited by the petitioner to show that courts will go back of the judgment and inquire as to the jurisdiction of the court that rendered it. From the decisions of the supreme court of the United

States in particular a large number of such cases have been
cited.   Such cases would be in point were they construing
a statute like ours, but such was not the case; on the con-
trary, the United States statute in force at the time these
cases were decided expressly authorized such inquiry.   That
such cases were entirely controlled by the statute in force
at the time is made clear by an examination of the course
of the decisions.   Prior to the statute of 1833 it was con-
ceded that a return to this writ, showing an imprisonment
under process legal and valid on its face, was conclusive.
See Church, Hab. Corp., § 222.   Of the cases upon the sub-
ject decided by the supreme courts of the different states
they are nearly all controlled by statutes different from
ours, and therefore not in point.   The states of Missouri
and Kansas have statutes substantially like ours, and the
decisions in those states seem to warrant the contention of
the petitioner.   The Missouri cases, however, do not seem
to have been carefully considered, and are far from satis-
factory.   But the case of *In re Petty*, 22 Kan. 477, was
a well considered case, and the court in an elaborate opin-
ion sustains the position of petitioner, both as to the con-
struction of the statute and as to the constitutional question.
The court says that the statute cannot be held to speak of
a judgment without jurisdiction for the reason that such
judgment was a nullity.   We have attempted to show that
such judgments are not nullities, and, if we have succeeded,
it follows that the reasoning of the court was from a wrong
basis, and therefore without value.   As to the constitu-
tional question, the court was clearly in error as to the rule
at common law; and, this being so, its reasoning, however
elaborate, could have but little weight.   Both of these
questions have been decided adversely to the position of
the Kansas case by the supreme court of the United States.
In the case of *Ex parte Watkins*, 3 Pet. 193, that distin-
guished jurist, Chief Justice MARSHALL, in an elaborate

opinion decided both of these questions, and held that, in the absence of a statute authorizing it, the supreme court could not go behind a judgment of a court of general jurisdiction to inquire as to the fact of jurisdiction in that particular case; and as the *habeas corpus* provided for in the constitution of the United States was as much the common-law writ as ours is, this case must be held conclusive of the constitutional question; and as the learned judge decides therein that judgments without jurisdiction are not nullities, this case may well be said to be decisive of this entire question. From an examination of all the cases that we have been able to find we think our statute is constitutional, and that under it we are precluded from questioning a judgment of a court of general jurisdiction fair upon its face. This conclusion disposes of the application, and makes it unnecessary to decide the first question above stated; and as such question will doubtless soon reach us in a case brought here on appeal, wherein it can be more deliberately briefed than it has been here, we think best not to decide it now. The order to show cause must be vacated, and the writ denied.

ANDERS, C. J., and DUNBAR, STILES, and SCOTT, JJ., concur.