[No. 29532. Department Two. April 24, 1945.]

*In the Matter of the Application of* RICHARD GRIEVE
*for a Writ of Habeas Corpus.*[1]

*H. E. Foster*, for appellant.

*The Attorney General* and *Hugh A. Dressel, Assistant*, for respondent.

ROBINSON, J.—In August, 1944, Richard Grieve filed a petition for a writ of *habeas corpus* in this court, seeking his discharge from the custody of the superintendent of the Washington state penitentiary. An order to show cause why the writ should not issue was granted and made returnable before the superior court of Thurston county. In due course, a return was filed in that court, in which the respondent alleged that he held the petitioner in custody by virtue of a judgment and sentence, and a commitment issued pursuant thereto by a judge of the superior court of the state of Washington for Yakima county. Certified copies of these documents were attached to the return and made a

[1]Reported in 158 P. (2d) 73.

part thereof. Respondent prayed that the petition be dismissed and that he be discharged.

Petitioner filed a motion for judgment, on the ground that the return was insufficient in law to authorize his detention, and raised the same question by a general demurrer. The court heard argument on the motion and demurrer and, in due course, entered an order and judgment denying the petition and dismissing the proceedings. It is from that order that this appeal is taken.

It is recited, in the introductory portion of the petition, that the "pretense" for the petitioner's detention is a certain document, "purporting" to be a warrant of commitment issued out of the superior court of the state of Washington for Yakima county, based upon a judgment rendered by that court in March, 1939, following "an alleged conviction, as the result of a guilty plea, to an Information containing two counts, respectively charging 'Burglary in the Second Degree,' and 'Robbery,'" and a certified copy of the information and judgment is attached to, and made a part of, the petition. The gist of the petition is found in paragraph VI thereof, which reads as follows:

"That the detention and imprisonment, as aforesaid, is illegal, in this to-wit: That said Information charges two separate and distinct crimes, contrary to the statutes in such cases made and provided, and is, therefore, totally defective and void."

This case might adequately be disposed of at this point by a few appropriate citations. We think it well, however, to go beyond that, for the following reasons: On nearly every motion calendar of this court, for a number of years, there has appeared one or two applications for writs of *habeas corpus* by persons confined in the state penitentiary. Almost always, as in the instant case, the petition itself purports to have been prepared by the petitioner. Yet, it is unmistakably evident that almost all have been prepared by, or with the assistance of, a lawyer, or, perhaps, some ex-lawyer or lawyers temporarily detained in that institution and who, therefore, presumably do not have access to an adequate law library. We think that it will work to the

advantage of all concerned if it be made clear to these un-named and unknown advocates that, in the courts of this state, the writ of *habeas corpus* cannot be used as a medium to review trial errors, but that its authorized use is limited by law to those cases where it appears that the judgment and sentence, by virtue of which the petitioner is held in confinement, is void *on its face.*

The writ of *habeas corpus* existed at common law prior to the promulgation of Magna Charta. There are several distinct species of that writ, of which the most important is the writ of *habeas corpus ad subjiciendum,* which is the appropriate remedy for one illegally deprived of his liberty. It has been held to be the remedy referred to when the term *"habeas corpus"* appears in the constitution of the United States and in the constitutions of the states. When the return to the order to show cause why the writ should not issue pleads that the petitioner is held under a commitment issued pursuant to a judgment of a court of general jurisdiction, the authorized scope of the inquiry, unless it has been broadened by statute, is very limited. Literally, there is but one question presented to the court for decision, and that is: Is this a judgment or a nullity? Moreover, that question is to be resolved by an examination of the judgment pleaded only, and not by opening up the record or by the taking of testimony. The function of the court in such a situation, in the absence of a statute giving it greater author-ity, was early decided by the supreme court of the United States in *Ex parte Watkins,* 28 U. S. (3 Pet.) 193, 7 L. Ed. 650, a case decided in 1830. The opinion deserves some-what extensive quotation:

"MARSHALL, Ch. J., delivered the opinion of the court.— This is a petition for a writ of *habeas corpus* to bring the body of Tobias Watkins before this court, for the purpose of inquiring into the legality of his confinement in jail. The petition states that he is detained in prison, by virtue of a judgment of the circuit court of the United States, for the county of Washington, in the district of Columbia, rendered in a criminal prosecution carried on against him in that court. A copy of the indictment and judgment is annexed to the petition, and the motion is founded on the allegation,

that the indictment charges no offence for which the prisoner was punishable in that court, or of which that court could take cognisance; and consequently, that the proceedings are *coram non judice*, and totally void. . . .

"No law of the United States prescribes the cases in which this great writ shall be issued, nor the power of the court over the party brought up by it. The term is used in the constitution, as one which was well understood; and the judiciary act authorizes this court, and all the courts of the United States, and the judges thereof, to issue the writ 'for the purpose of inquiring into the cause of commitment.' This general reference to a power which we are required to exercise, without any precise definition of that power, imposes on us the necessity of making some inquiries into its use, according to that law which is in a considerable degree incorporated into our own. . . .

"Can the court, upon this writ, look beyond the judgment, and re-examine the charges on which it was rendered? A judgment, in its nature, concludes the subject on which it is rendered, and pronounces the law of the case. The judgment of a court of record, whose jurisdiction is final, is as conclusive on all the world as the judgment of this court would be. It is as conclusive on this court, as it is on other courts. It puts an end to inquiry concerning the fact, by deciding it. . . .

"An imprisonment under a judgment cannot be unlawful, unless that judgment be an absolute nullity; and it is not a nullity, if the court has general jurisdiction of the subject, although it should be erroneous. The circuit court for the district of Columbia is a court of record, having general jurisdiction over criminal cases. An offence cognisable in any court, is cognisable in that court. If the offence be punishable by law, that court is competent to inflict the punishment. The judgment of such a tribunal has all the obligation which the judgment of any tribunal can have. To determine whether the offence charged in the indictment be legally punishable or not, is among the most unquestionable of its powers and duties. The decision of this question is the exercise of jurisdiction, whether the judgment be for or against the prisoner. The judgment is equally binding in the one case and in the other; and must remain in full force, unless reversed regularly by a superior court, capable of reversing it.

"If this judgment be obligatory, no court can look behind it. If it be a nullity, the officer who obeys it is guilty of

false imprisonment. Would the counsel for the prisoner attempt to maintain this position?"

The scope of the inquiry in the Federal courts when an alleged judgment is pleaded in a return to an order to show cause in a *habeas corpus* proceeding has been considerably extended by statutes enacted since the decision, above quoted, was rendered. See Historical Note, 28 U. S. C. A. 17, § 453. In this state, on the contrary, the narrow common-law scope of the inquiry, as defined by Chief Justice Marshall in *Ex parte Watkins, supra,* has been rigidly preserved by a positive statute. We quote a portion of a section of chapter 4, Remington's Revised Statutes, p. 239, entitled "Habeas Corpus":

"1075. No court or judge shall inquire into the legality of any judgment or process whereby the party is in custody, or discharge him when the term of commitment has not expired, in either of the cases following:—

"1. Upon any process issued on any final judgment of a court of competent jurisdiction; . . ."

There has been no change whatever in the above text since it was originally adopted as part of the territorial laws of 1854. Laws of 1854, p. 213, § 445. Pertinent decisions are found in the territorial reports. We quote from *Ex parte Williams,* 1 Wash. Terr. 240:

"Richard Williams, the petitioner, was tried and sentenced for murder in the second degree, in the court below, and no appeal or writ of error having been prosecuted from such judgment, this Court is now asked to consider and review the judgment below on a writ of *habeas corpus.*

"The application for this writ is placed on the ground that the court below had no jurisdiction in the premises, and that the prisoner was tried under a Territorial law, when in fact he should have been tried under a United States law. We are of opinion that the jurisdictional limits of the Court embraced both laws, and that the determination of the question under which law the prisoner should be tried was a matter proper for the determination of the Court below, and that the Court was therefore a Court of competent jurisdiction; and if in the determination of that question error was committed, the same can be corrected only on writ of error or appeal. [Citing cases.]"

In the case of *In re Rafferty,* 1 Wash. 382, 25 Pac. 465, speaking of the statute which prohibits inquiry into the legality of any commitment issued on the final judgment of a court of competent jurisdiction, the court said:

"He claims the lower court, by reason of alleged errors, lost jurisdiction of defendant's person, and that the writ can issue in all cases where such jurisdiction is wanting. But we are of the opinion said provision does not mean that the writ will lie where the court did not have and maintain such jurisdiction by regular process and proceedings, but means a court competent to exercise jurisdiction in the premises. In such cases, defendants must be left to the remedy by appeal."

The most important of the early cases is *In re Lybarger,* 2 Wash. 131, 25 Pac. 1075, in which the court considered, at some length, not only the effect of the statute, but also its constitutionality. We quote the following excerpts from that opinion:

"Our statute provides that no court shall inquire into the legality of any judgment or process whereby the party is in custody, when such custody is upon any process issued on any final judgment of a court of competent jurisdiction; and if the words 'final judgment' mean what they say, it would seem to preclude the issuing of the writ in the case at bar. . . . When the officer returns as his authority for holding a prisoner a commitment which shows upon its face that such person is committed by a court of general jurisdiction in pursuance of its final judgment for a crime triable by such court, we think he has brought himself within the provisions of our statute, and that the courts are, by the terms thereof, precluded from inquiring further into the cause of detention; and that neither by having the record set out in the petition, nor by bringing it here by *certiorari,* can this court look therein to see whether or not the court had jurisdiction in that particular case. To hold that we could investigate this question in the face of the statute would be to hold that the judgment was an absolute nullity for all purposes, which we have seen would not be reasonable, and would lead to results which could not be tolerated without an entire change of practice as to the presumptions in favor of the judgments of such courts. . . . From an examination of all the cases that we have been able to find we think our statute is constitutional, and that under it we

are precluded from questioning a judgment of a court of general jurisdiction fair upon its face."

Our subsequent decisions have been to the same effect. Although many others could be cited, we think the citation of *In re Nolan*, 21 Wash. 395, 58 Pac. 222; *In re Casey*, 27 Wash. 686, 68 Pac. 185; and *In re Newcomb*, 56 Wash. 395, 105 Pac. 1042, is sufficient to show that, by 1924, the court was fully warranted in saying, in its opinion in *In re Voight*, 130 Wash. 140, 226 Pac. 482:

"No proposition is better settled in this state than that the writ of *habeas corpus* cannot be used to collaterally attack a judgment, even though the judgment is erroneous, if not utterly void."

Voight, or Voigt, as he then spelled it, renewed his application for a writ in 1941 in *Voigt v. Mahoney*, 10 Wn. (2d) 157, 116 P. (2d) 300. Again, the court announced its adherence to the rule, and added:

"Later cases in this court have recognized as sound the rule announced in the *Voight* case, *supra*, to the effect that a judgment by a court of competent jurisdiction, valid on its face, and a valid commitment thereunder, constitute an unanswerable return to a writ of *habeas corpus*. *In re Hannigan*, 136 Wash. 60, 238 Pac. 913; *State ex rel. Wagner v. Superior Court*, 144 Wash. 71, 256 Pac. 784; *In re Hulet*, 159 Wash. 98, 292 Pac. 430."

Voigt, or Voight, had been charged with murder. He pleaded guilty, and was sentenced to life imprisonment when the following statute was in effect:

"If, on the arraignment of any person, he shall plead guilty, if the offense charged be not murder, the court shall, in its discretion, hear testimony, and determine the amount and kind of punishment to be inflicted; *but if the defendant plead guilty to a charge of murder, a jury shall be impaneled to hear testimony, and determine the degree of murder and the punishment therefor.*" Rem. Comp. Stat., § 2116, now Rem. Rev. Stat., § 2116 [P. C. § 9169]. (Italics ours.)

In his two applications to this court, Voigt offered to prove, by the records of the trial court and through the affidavit or, if the court so directed, by the oral evidence of the prosecutor who conducted the action against him,

that no jury was called to hear testimony and determine the degree of murder and the punishment therefor. But the court, in each instance, refused to issue the writ because it was not stated in the judgment that a jury had not been called, but was recited therein that the defendant had been duly convicted. It was, therefore, fair and regular on its face. After his failure on the second attempt, he applied for a writ in the district court of the United States for the eastern district of Washington, and that court, not being governed and controlled by our restrictive statute, granted it. In speaking of the two *Voigt* cases in this court, it was rightly said, in the Federal court opinion:

"What the State Supreme Court held in both of these cases was that, under the Washington State habeas corpus statute, relief may only be granted to a petitioner if the judgment and sentence are void." *Voigt v. Webb,* 47 F. Supp. 743, 749.

It is urged, in the instant case, that we have since departed from that rule in the case of *In re Horner,* 19 Wn. (2d) 51, 141 P. (2d) 151. The facts set up in Horner's application for a writ of *habeas corpus* were the same as those alleged by Voigt, that is, that he had pleaded guilty of murder, and that judgment and sentence had been entered without the calling of a jury. The opinion shows that, after analyzing the application, we said:

"The vital question in this case is: Is the judgment and sentence under which the respondent holds the petitioner void on its face?"

Upon an examination of the judgment and sentence, we found that it was distinguishable from that in the *Voigt* cases, in that it was affirmatively shown on the face of the instrument that no jury had been called. It was, therefore, plain that the instrument was no judgment, but a nullity, since it showed on its face that the trial never reached the point where a judgment could lawfully be rendered. Horner was, accordingly, discharged from the custody of the superintendent of the penitentiary and remanded to the custody of the sheriff of Cowlitz county, from which he had been committed, in order that his trial might be completed. A

similar procedure has been applied in a number of other *habeas corpus* matters. Several of these cases are cited in the *Horner* opinion at pages 55 and 56 in our reports, and page 154 of the Pacific Reporter. These were cases in which the judgments, relied on as warranting detention, showed on their face that the petitioners had been sentenced for the crime of being "an habitual criminal." There being no such crime in this jurisdiction, these so-called judgments were held to be nullities, and the petitioners sent back to the respective committing courts for resentence.

 The judgment in this case shows on its face that it was rendered in the superior court of the state of Washington in and for Yakima county. We take notice that that is a court of general jurisdiction. That the offenses with respect to which the petitioner was sentenced are statutory crimes, is admitted. That the court had jurisdiction of the petitioner's person is shown; in fact, it is recited that he pleaded guilty to the indictment. Nothing is wanting to show a judgment, regular on its face.

While we are not permitted to examine the indictment or information, the judgment itself does indicate that it must have contained two counts alleging different crimes on different days; for it recites:

"The State of Washington being represented by the Prosecuting Attorney of Yakima County, and said defendant RICHARD GRIEVE appearing in person without counsel, defendant having waived counsel in open court and the plaintiff having moved for judgment and sentence of the court herein upon said defendant, said defendant is informed by the court of the nature of the information filed against him charging him with having committed the crime of Burglary in the Second Degree on Count One and committed on or about February 20, 1939, and Robbery on the Second Count committed on or about the 5th day of March, 1939, of defendant's arraignment and plea of Guilty to both counts charged in said information."

It is urged that there is enough shown on the face of the judgment to warrant us in holding that the information was void. It is claimed that the indictment or information is void because it does not conform to Rem. Rev. Stat., § 2059

[P. C. § 9272]. This is a statute regulating criminal pleading, a mere matter of form, not of substance. For aught that can be determined from the judgment, the information probably met the requirements of Rem. Rev. Stat., § 2059, which provides what an information must contain.

If the petitioner had moved against the information, and the trial court had overruled his motion for a severance; and he had gone to trial and been convicted, it is probable that he would have been granted a new trial, on the theory that the jury might have been prejudiced by the misjoinder. It is more than doubtful, since he pleaded guilty, whether he could have secured any relief by an appeal from the judgment actually entered. It would probably have been held that he waived defects of form, and that, in any event, he had not been prejudiced by the misjoinder.

But there is no need to speculate as to these matters. Trial errors cannot be reviewed or indictments tested by a writ of *habeas corpus:*

"Generally speaking, a question as to the sufficiency of the allegations of an indictment or information is not to be determined in a habeas corpus proceeding. The court which has jurisdiction of the accused and of prosecutions of the class of offenses with which the indictment or information purports to charge the accused is the tribunal in which such question should be raised, and its determination thereof cannot be attacked collaterally under a writ of habeas corpus, . . . . To extend the inquiry under such a writ to the determination of ordinary questions concerning the sufficiency of an indictment or information would give to the character of the proceeding the attributes of an appeal or error proceeding, which it cannot properly have." 25 Am. Jur. 173, § 41.

Instead of prolonging an already too long opinion by the citation of further authorities, we incorporate, by reference, and make a part hereof, the cases cited in the footnotes, 13 to 16, inclusive, to the text, just above quoted.

In this opinion, we have, in addition to deciding the instant case, endeavored to make it clear that allegations that the petitioner was convicted by a confession secured by third-degree methods, or pleaded guilty upon the promise that he would receive a light sentence, or under a threat of

the prosecuting attorney that he would be shot unless he did so, or was convicted because the trial judge refused to suppress evidence secured without a search warrant, all of which allegations, with others of a similar nature, have been hopefully set up as a basis for many of the numerous petitions, hereinabove referred to, furnish no basis for the issue of a writ of *habeas corpus* by the courts of this state to release a petitioner detained by virtue of a judgment and sentence fair on its face. If such allegations are true, and can be sustained, some other remedy must be invoked.

The judgment and order appealed from is affirmed.

BEALS, C. J., BLAKE, SIMPSON, and MALLERY, JJ., concur.