**James J. FLANIGAN, Appellant,**

**v.**

**STATE of Alaska, Appellee.**

**No. A–7116.**

Court of Appeals of Alaska.

June 2, 2000.

---

J. John Franich, Assistant Public Advocate, Fairbanks, and Brant G. McGee, Public Advocate, Anchorage, for Appellant.

Nancy R. Simel, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## *O P I N I O N*

STEWART, Judge.

In 1982, James J. Flanigan was convicted of first-degree murder.[1] On direct appeal, this court affirmed Flanigan's conviction and his 60–year sentence.[2] More than 12 years later, on August 15, 1996, Flanigan filed an application for post-conviction relief. Flanigan's application raised several claims including insufficiency of evidence to support the verdict, prosecutorial misconduct during trial, and ineffective assistance of counsel.

The State moved to dismiss Flanigan's application, claiming it was untimely. Flanigan opposed, arguing that the time-bar the State relied on was unconstitutional if applied to incarcerated applicants. Flanigan also claimed that his late filing was excused because the prison library, where he was confined, was not updated in a timely fashion. Superior Court Judge Charles R. Pengilly granted the State's motion to dismiss.

In this appeal, Flanigan claims that the dismissal of his petition violated the constitutional prohibitions on suspending the writ of habeas corpus. Flanigan also claims that even if there was no constitutional violation, the superior court erroneously rejected his excuse for filing late.

### *Discussion*

#### *Is Flanigan's petition within the scope of Habeas Corpus?*

Alaska Criminal Rule 35.1 governs post-conviction relief proceedings. As Criminal Rule 35.1(b) states: "[Criminal Rule 35.1] is intended to provide a standard procedure for accomplishing the objectives of all of the constitutional, statutory or common law writs." The rule provides that an application must be filed within the time limitations set out in AS 12.72.020.[3] In addition to the time limitations in AS 12.72, Ch. 79 § 40, SLA 1995 established a savings clause for defendants whose convictions were entered before July 1, 1994. The savings clause required those defendants to file a petition for post-conviction relief by July 1, 1996:

> Notwithstanding any other provision of this Act, a person whose conviction was entered before July 1, 1994, has until July 1, 1996, to file a claim under AS 12.72.[4]

Flanigan was convicted and sentenced in 1982. The savings clause of Ch. 79 § 40, SLA 1995 set July 1, 1996 as the deadline by which Flanigan could file a post-conviction relief application. But Flanigan did not file his application until August 15, 1996, approximately 45 days after the deadline.

---

1. AS 11.41.100(a)(1)(A).

2. *See Flanigan v. State,* Memorandum Opinion and Judgment No. 583 (Alaska App., May 30, 1984).

3. *See* Alaska Criminal Rule 35.1(c).

4. Ch. 79, § 40, SLA 1995.

Flanigan argues that the federal and the State constitutional provisions that prohibit the suspension of the writ of habeas corpus also prevent the application of a time limit to his pursuit of a petition for post-conviction relief under Criminal Rule 35.1. To answer Flanigan's claim, we must consider the reach of the suspension clauses and determine the scope of habeas corpus.

The second clause of Article I, Section 9 of our federal constitution, known as the Suspension Clause, provides as follows:

> The privilege of the writ of habeas corpus shall not be suspended, unless when in cases of rebellion or invasion the public safety may require it.

A reading of this clause in isolation may suggest an inherent authority to issue a writ of habeas corpus in the absence of a valid suspension, at least to the extent that the writ was available at common law when the Constitution was drafted.[5] More fundamental to Flanigan's case, though, is the reach of the Suspension Clause. The Suspension Clause limits the power of the federal government to suspend the writ of habeas corpus.[6] By design, the Suspension Clause is not a limitation on state regulation of habeas corpus,[7] and Flanigan has cited no authority that it is.

Even though the federal Suspension Clause provides no relief for Flanigan, a review of federal authority provides insight into the scope of habeas corpus at common law. In cases where an incarcerated criminal defendant pursued a writ of habeas corpus, the Supreme Court originally viewed the scope of the common law writ to be limited to testing the jurisdiction of the sentencing court that issued the judgment restraining the petitioner.[8] But that understanding of the scope of common law habeas corpus did not always prevail. In *Fay v. Noia,*[9] a case decided after the Alaska Constitutional Convention, the Supreme Court reviewed the history of the writ and decided that "[a]t the time the privilege of the writ was written into the Federal Constitution it was settled that the writ lay to test any restraint contrary to fundamental law[.]"[10] That view of the scope of the writ expands a reviewing court's authority beyond the limited question of the sentencing court's jurisdiction. However, in a concurring opinion in *Schneckloth v. Bustamonte,*[11] Justice Powell criticized that expansive view of the scope of the common law writ. Justice Powell opined that the scope of the common law writ perceived by the majority in *Fay v. Noia* depended on "a revisionist view of the historic function the writ was meant to perform."[12] Justice Powell noted that the scope of the common law writ was limited to an inquiry into the formal jurisdiction of the sentencing court. He found support for that view in Chief Justice Marshall's opinion in *Ex parte Watkins* :

> This writ is, as has been said, in the nature of a writ of error which brings up the body of the prisoner with the cause of commitment. The court can undoubtedly inquire into the sufficiency of that cause; but if it be the judgment of a court of competent jurisdiction, especially a judgment withdrawn by law from the revision of this court, is not that judgment in itself sufficient cause?[13]

Chief Justice Marshall's answer to his own

---

5. *See Swain v. Pressley*, 430 U.S. 372, 384–85, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977) (Burger, C.J., concurring).

6. *See Morgan's Louisiana & T.R. & S.S. Co. v. Board of Health*, 118 U.S. 445, 467, 6 S.Ct. 1114, 30 L.Ed. 237 (1886).

7. *See Gasquet v. Lapeyre*, 242 U.S. 367, 369, 37 S.Ct. 165, 61 L.Ed. 367 (1917).

8. *See Ex parte Watkins*, 28 U.S.(3 Pet.) 193, 201–02, 7 L.Ed. 650 (1830); *Wood v. Brush*, 140 U.S. 278, 280, 11 S.Ct. 738, 35 L.Ed. 505 (1891).

9. 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) (overruled in part by *Wainwright v. Sykes*,

433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).

10. *Id.* at 426, 83 S.Ct. 822.

11. 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

12. *Id.* at 252, 93 S.Ct. 2041 (Powell, J., concurring).

13. *Id.* at 253, 93 S.Ct. 2041 (quoting *Ex parte Watkins*, 28 U.S. at 201–02).

rhetorical question was yes.[14]

In *Felker v. Turpin*, Chief Justice Rehnquist, writing for a unanimous court, revisited the scope of the common law writ of habeas corpus for an incarcerated criminal defendant.[15] Chief Justice Rehnquist also relied on *Ex parte Watkins* for guidance on the scope of the common law writ when the constitution was adopted: for an incarcerated defendant, the common law writ was limited to testing the jurisdiction of the sentencing court.[16]

■ Article I, Section 13 of the Alaska Constitution is similar to the suspension clause in several state constitutions and similar to the federal Suspension Clause:

> The privilege of the writ of habeas corpus shall not be suspended, unless when in cases of rebellion or actual or imminent invasion, the public safety requires it.

Part of the materials provided to the delegates at our Constitutional Convention was a review of the suspension clauses contained in the federal and in state constitutions. The material specifically quoted only the Louisiana and Oklahoma constitutions.[17] That review highlighted the major distinguishing factor in the various suspension clauses: some state constitutions, like Oklahoma, barred any suspension of the writ;[18] the federal constitution and other states, like Louisiana, permitted suspension of the writ in times of rebellion or invasion.[19]

The discussion of the proposed Alaska suspension clause during the Constitutional Convention centered on a concern for the realities of existing warfare and Alaska's proximity to the former Soviet Union.[20] An absolute suspension clause, like Oklahoma's, was criticized because of the view that Alaska was more likely to be attacked than a state positioned in the middle of the country like Oklahoma.[21] In response to the delegates' concern about attack and invasion, the proposed Alaska suspension clause was modified to read "actual or imminent invasion" so that a potential invasion was a circumstance that could justify suspension of the writ. However, nothing in the delegates' discussion of a suspension clause reflected any understanding that the delegates considered that the writ of habeas corpus protected by the suspension clause under consideration had any different scope than existed at common law.

Decisions that examined the common law scope of habeas corpus prior to the Alaska Constitutional Convention, both from Alaska[22] and other states,[23] agreed with the original view of the Supreme Court discussed above: the common law writ of habeas corpus permits an incarcerated criminal defendant to test the jurisdiction of the sentencing court. In *Hoffman v. State*,[24] our supreme court appeared to depart from that limited view of the scope of common law habeas corpus to follow the broader view expressed by the *Fay* Court. Hoffman sought relief in habeas corpus when the superior court incarcerated him after revoking his probation. Hoffman was indigent and was not provided the assistance of counsel in the superior court. The *Hoffman* court concluded that

**14.** *Id.*

**15.** 518 U.S. 651, 663, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996).

**16.** *Id.*

**17.** *See* Public Administration Service, 1 Constitutional Studies: Civil Rights and Liberties (November 8, 1955).

**18.** *See, e.g.,* Oklahoma Constitution, Article II, Section 10: "The privilege of the writ of habeas corpus shall never be suspended by the authorities of this state."

**19.** *See, e.g.,* Louisiana Constitution, Article I, Section 13: "The privilege of the writ of habeas corpus shall not be suspended, unless, when in cases of rebellion, or invasion, the public safety may require it."

**20.** Proceedings of the Alaska Constitutional Convention, Part 2, Pgs. 1358–65; 1450–54.

**21.** *Id.*

**22.** *See Mabry v. Beaumont*, 6 Alaska 512, 515 (D.Alaska. Terr.1922); *Roberts v. State*, 445 P.2d 674, 676 (Alaska 1968).

**23.** *See Grieve v. Webb*, 22 Wash.2d 902, 158 P.2d 73, 74 (1945); *In re Forest*, 45 N.M. 204, 113 P.2d 582, 584 (1941).

**24.** 404 P.2d 644, 647 & n. 11 (Alaska 1965).

Hoffman had a right to counsel.[25]

Compliance with the right to counsel is such a fundamental requirement of due process that it is an essential prerequisite to jurisdiction.[26] Thus, the adoption of a broader view of habeas corpus was not essential to the resolution of Hoffman's case because deprivation of counsel deprives a court of jurisdiction. The *Fay* Court's broad view of the scope of common law habeas corpus is now disfavored in the U.S. Supreme Court and there is no reason to conclude that our supreme court would now find that the scope of the writ protected by the suspension clause adopted at the Alaska Constitutional Convention was broader than the then-prevailing view of the common law writ's scope.

■ Although Flanigan made a number of claims in his petition for post-conviction relief, he has not argued that his petition included a claim that the superior court lacked personal or subject matter jurisdiction in his criminal case. We find no such claim in our independent review of the petition for post-conviction relief that Flanigan filed in the superior court.

Because Flanigan's petition for post-conviction relief did not include a claim that was within the scope of the common law writ of habeas corpus, Flanigan's argument that the time bar in Ch. 79 § 40, SLA 1995 violates the suspension clause of the Alaska constitution is immaterial, because Flanigan's petition did not plead a claim within the scope of the common law writ of habeas corpus. Although Article I, Section 13 may preclude a state limitation on an applicant's quest for relief that would have been available in a common law writ of habeas corpus, nothing in Flanigan's petition for post-conviction relief was within the scope of that writ. Therefore, Judge Pengilly's reliance on the July 1996 time limit to dismiss Flanigan's petition did not violate the prohibition on suspending the writ of habeas corpus.

25. *Id.*

26. *See Johnson v. Zerbst,* 304 U.S. 458, 467, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

27. This statute reads: "[A] court may hear a claim [for post-conviction relief] if the applicant

*Did the superior court erroneously reject Flanigan's excuse for his delay in filing his petition?*

Next, Flanigan argues that even if the time limits on petitions for post-conviction relief are constitutional, his petition should have been accepted under AS 12.72.020(b)(1)(B) because agents of the State prevented him from filing a timely petition.[27] While Flanigan was working on his petition for post-conviction relief, he was incarcerated in a Florida prison. In the superior court, Flanigan submitted his own affidavit and affidavits from prison officials attesting that the prison's copy of the 1995 Alaska Statutes was misplaced and unavailable for several months. Flanigan claimed that, because of this administrative error, he remained unaware that the Alaska Legislature had enacted a filing deadline for post-conviction relief petitions, and thus he missed the deadline.

■ Flanigan's allegations, even if true, do not appear to qualify him for relief under AS 12.72.020(b)(1)(B). The statute requires proof that agents of the State "physically prevented" a defendant from filing a timely petition. Flanigan claims that he lacked access to a current copy of the Alaska statutes, but he does not claim that anyone physically prevented him from filing his petition. Moreover, Flanigan does not claim that government agents intentionally withheld the Alaska statutes or intentionally made them difficult to find. In his own affidavit, Flanigan declared that he "point[ed] fingers at no one". Flanigan stated "that the 1995 Alaska Statutes were actually misplaced and [not] discovered [again until] in late November [1996] ... due to the [prison] uprising [which occurred in] October 1995. It took the better part of a year for the library at ... Talladega [Prison] to become fully functional again."

Finally, we note that Flanigan's claim really amounts to an "ignorance of the law"

establishes due diligence in presenting the claim and sets out facts supported by admissible evidence establishing that the applicant was physically prevented by an agent of the state from filing a timely claim."

argument. Flanigan does not assert that the legislature enacted a new ground for seeking post-conviction relief in 1995 and that he remained ignorant of this new ground until the missing 1995 statute books were recovered. The grounds for seeking post-conviction relief remained the same; what changed in 1995 was the enactment of a time limit for filing a post-conviction relief action. Flanigan may have remained ignorant of this time limit, but Flanigan's lack of access to the 1995 statutes did not prevent him from researching and filing his claim.

### Conclusion

The judgment of the superior court is AFFIRMED.

MANNHEIMER, Judge, with whom COATS, Chief Judge, joins, concurring.

I concur in the court's decision that the legislated time limits on petitions for post-conviction relief do not violate the habeas corpus clauses of the federal and state constitutions. I write separately to clarify my reasons for reaching this conclusion.

James Flanigan was convicted of murder in 1982, and this court affirmed his conviction in 1984.[1] In 1995, the legislature established time limits for filing a petition for post-conviction relief.[2] Under AS 12.72.020(a)(3)(A), a petition for post-conviction relief must be filed within two years of the date judgement was entered against the defendant or, if the defendant appealed the conviction, within one year of the date the judgement was affirmed on appeal. For defendants like Flanigan whose convictions became final before July 1, 1994, the legislature established a special deadline of July 1, 1996.[3]

In August 1996, Flanigan filed a petition for post-conviction relief, but this petition was dismissed because Flanigan missed the July 1st filing deadline. He now asserts that the legislated filing deadlines amount to an abrogation or "suspension" of the writ of habeas corpus for inmates who miss the pertinent deadline. That is, Flanigan argues that the legislature's action violates both Article I, Section 9 of the United States Constitution and Article I, Section 13 of the Alaska Constitution.

Flanigan's federal constitutional argument is easily decided. Article I, Section 9 of the United States Constitution declares, in pertinent part:

> The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.

Article I, Section 9 does not purport to limit the power of the states, but rather the power of the federal Congress.[4] Thus, even if the Alaska Legislature had tried to abolish the writ of habeas corpus, the legislature's action would not violate Article I, Section 9 of the federal Constitution. (And, of course, the federal writ of habeas corpus would remain in force in Alaska.)

Flanigan's state constitutional argument requires more attention. Article I, Section 13 of the Alaska Constitution provides:

> Habeas Corpus.
>
> The privilege of the writ of habeas corpus shall not be suspended, unless when in cases of rebellion or actual or imminent invasion, the public safety requires it.

As can be seen, this section of the Alaska Constitution tracks the language of the federal provision. The drafters of Article I of our state constitution stated in their accompanying commentary that the Alaska habeas corpus provision was "identical with the Federal Constitution" except for the additional language addressing "imminent invasion".[5]

---

1. See Flanigan v. State, Memorandum Opinion No. 583 (Alaska App., May 30, 1984).

2. See SLA 1995, ch. 79, § 9.

3. See SLA 1995, ch. 79, § 40.

4. See Wayne R. LaFave and Jerold H. Israel, Criminal Procedure (1984), § 27.2(a), Vol. 3, pp. 289–290.

5. See Report of the Committee on Preamble and Bill of Rights (December 15, 1955), reprinted in Proceedings of the Alaska Constitutional Convention, Part 6, Appendix 5, p. 66.

This one change—the reference to "actual or imminent invasion"—was born of the Cold War and advances in military technology. This language was inserted to deal with the possibility that an enemy might attack and subjugate Alaska by bombs and missiles, before any foreign troops

If, as Flanigan claims, the time limits on petitions for post-conviction relief amount to a "suspension" of the writ of habeas corpus, then AS 12.72.020(a)(3)(A) would violate Article I, Section 13 of our state constitution. But in order to determine whether AS 12.72.020 restricts the availability of the constitutionally guaranteed writ of habeas corpus, we must ascertain what the drafters of the Alaska Constitution meant when they spoke of the "writ of habeas corpus".

As noted above, the drafters of our state's habeas corpus provision essentially copied the language of the federal Constitution. At the constitutional convention, the debate concerning Article I, Section 13 focused exclusively on choosing appropriate language to deal with attacks that did not involve immediate physical invasion. The delegates did not discuss the meaning of the phrase "writ of habeas corpus".[6] From this, I infer first, that the delegates to the constitutional convention concurred in the drafters' statement that Article I, Section 13 was substantively "identical" to the federal provision, and second, that the delegates intended Article I, Section 13 to protect the same right of habeas corpus guaranteed by the federal Constitution. So, to understand what right is protected by Article I, Section 13 of the Alaska Constitution, we must examine the meaning of "writ of habeas corpus" as that phrase is used in the federal Constitution.

The "writ of habeas corpus" guaranteed by Article I, Section 9 of the federal Constitution is the writ that was known at common law as *"habeas corpus ad subjiciendum"*.[7]

This writ rose to prominence as "The Great Writ" during the sixteenth century, when the common law courts began to use habeas corpus as a means of granting relief to persons imprisoned by order of the King's Council without judicial authorization.[8] The writ "won its place as the most important safeguard of personal liberty ... when employed against the crown and its officers ... to elicit the cause for an individual's imprisonment and to ensure that he was released, admitted to bail, or promptly tried[.]"[9]

But although the writ of habeas corpus was available to anyone held against their will, the writ was not intended to provide a general method for collaterally attacking a criminal conviction. Rather, the writ simply commanded the jailor or other custodian to produce legal justification for holding the petitioner. In the case of prison inmates, this usually meant that the jailor had to produce the judgement authorizing the petitioner's incarceration. Once the criminal judgement was produced, the habeas corpus petitioner could attack the judgement only on the ground that the issuing court had lacked jurisdiction over the petitioner or the petitioner's offense.[10]

This is not to say that the common law forbade collateral attacks on a criminal conviction. Such attacks were allowed (within a limited scope), but not under the rubric of habeas corpus. Rather, the writs of *coram nobis* and *coram vobis* were the vehicles for attacking a conviction based on errors com-

---

physically invaded the state. As originally proposed, the habeas corpus provision used the phrase, "imminent peril". This phrase was amended to "imminent invasion" during floor debate. *See Proceedings of the Alaska Constitutional Convention*, Part 2, pp. 1358–1366, 1450–54.

**6.** The entire debate on Article I of the Alaska Constitution is found in *Proceedings, supra*, Part 2, pp. 1280–1503.

**7.** *See* LaFave and Israel, *Criminal Procedure, supra*, § 27.1(b), Vol. 3, pp. 285–86; *Fay v. Noia*, 372 U.S. 391, 399–400, 83 S.Ct. 822, 827–28, 9 L.Ed.2d 837 (1963); *Petition of Runyan*, 121 Wash.2d 432, 853 P.2d 424, 429 (1993); *Bartz v. State*, 314 Or. 353, 839 P.2d 217, 224 (1992).

**8.** *See LaFave and Israel*, § 27.1(b), Vol. 3, p. 286.

**9.** Dallin H. Oaks, *Habeas Corpus in the States— 1776–1865*, 32 Univ. Chicago Law Rev. 243, 244 (1965) (quoted in *LaFave and Israel*, § 27.1(b), Vol. 3, p. 288).

**10.** *See LaFave and Israel*, § 26.4(a), Vol. 3, pp. 222–23, *and* § 27.1(b), Vol. 3, pp. 287–88. *See also Schneckloth v. Bustamonte*, 412 U.S. 218, 254, 93 S.Ct. 2041, 2061, 36 L.Ed.2d 854 (1973) (Powell, J., concurring); *United States v. Hayman*, 342 U.S. 205, 210–11, 72 S.Ct. 263, 268, 96 L.Ed. 232 (1952); *Johnson v. Zerbst*, 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *Ex Parte Watkins*, 28 U.S. (3 Pet.) 193, 202–03, 7 L.Ed. 650 (1830).

mitted by the trial court.[11]

In modern times, we are used to seeing the writ of habeas corpus employed as a method of collaterally attacking a criminal judgement for constitutional error. This is because the United States Congress, in 1867, passed a statute broadening the scope of the habeas corpus remedy. Under the Habeas Corpus Act of 1867, any federal or state prisoner could collaterally attack a criminal conviction on the ground that it was obtained in violation of either the constitution or the laws of the United States.[12]

As the Supreme Court explained in *Johnson v. Zerbst:*

> Congress has expanded the rights of a petitioner for habeas corpus[,] and the effect [of this change] is to substitute for the bare legal review that seems to have been the limit of judicial authority under the common-law practice ... a more searching investigation [into] the causes of [the petitioner's] detention, and the court, upon determining the actual facts, is to dispose of the [petitioner] as law and justice require.
>
> There [is] no doubt of the authority of Congress to thus liberalize the common-law procedure on habeas corpus in order to safeguard the liberty of all persons within the jurisdiction of the United States against infringement through any violation of the Constitution or a law or treaty [of the United States, and thus] a prisoner in custody pursuant to the final judgment of a state court of criminal jurisdiction may have a judicial inquiry in a court of the United States into the very truth and substance of the causes of [the prisoner's] detention[.]

304 U.S. at 466, 58 S.Ct. at 1024 (footnotes and internal quotations omitted).

But this broadened writ of habeas corpus was a creature of statute. The common-law writ guaranteed by the federal Constitution remained limited to jurisdictional attacks on a criminal judgement. The Supreme Court reiterated the limited nature of the constitutionally-guaranteed writ in *United States v. Hayman* (decided in 1952):

> Although the objective of the Great Writ long has been the liberation of those unlawfully imprisoned, at common law a judgment of conviction rendered by a court of general jurisdiction was conclusive proof that the confinement was legal. Such a judgment [by itself] prevented issuance of the writ[.]
>
> In 1867, Congress changed the common law rule by extending the writ of habeas corpus to "all cases where any person may be restrained of his or her liberty in violation of the constitution, or of any treaty or law of the United States", and [by] providing for inquiry into the facts of the detention.

*Hayman,* 342 U.S. 205, 210–11, 72 S.Ct. 263, 268, 96 L.Ed. 232 (1952).

Alaska decisions from the turn of the century recognized this limitation on the scope of the remedy afforded by the writ of habeas corpus. *See In re Burkell* [13] and *Mabry v. Beaumont* [14].

In late 1955, when the drafters of our state's habeas corpus provision copied the language of the federal habeas corpus clause, and in early 1956, when the delegates to the Alaska Constitutional Convention considered and debated the draft of Article I, Section 13, there was no discussion concerning the meaning or scope of the writ. By that time, the United States Supreme Court had unambiguously explained the limited nature of the constitutionally guaranteed writ, contrasting it with the broader statutory writ enacted by Congress. Given this historical backdrop, I conclude that the framers of the Alaska Constitution intended our habeas corpus provision to guarantee the same limited common-law writ guaranteed by the United States Constitution.

---

**11.** *LaFave and Israel,* § 27.1(c), Vol. 3, pp. 288–89.

**12.** *See LaFave and Israel,* § 27.2(b), Vol. 3, pp. 292–96. *See United States v. Hayman,* 342 U.S. at 210–11, 72 S.Ct. at 268; *Johnson v. Zerbst,* 304 U.S. at 465–67, 58 S.Ct. at 1023–24.

**13.** 2 Alaska Rpts. 108 (1903).

**14.** 6 Alaska Rpts. 512 (1922).

This was the view of our first state legislature when, in 1962, they enacted AS 12.75—the chapter of the Alaska Statutes that codifies the writ of habeas corpus and the procedures governing habeas corpus litigation. AS 12.75 codifies a narrow writ of habeas corpus, modeled after the common-law writ guaranteed by the federal and state constitutions. AS 12.75.020 declares:

> A person properly imprisoned or restrained by virtue of a legal judgment [issued by] a competent tribunal [having] civil or criminal jurisdiction ... shall not be allowed to prosecute the writ.

And AS 12.75.110 declares:

> No court or judge, on the return of a writ of habeas corpus, may inquire into the legality or justice of any order, judgment, or [court] process specified in AS 12.75.020 or into the justice, propriety, or legality of a commitment for contempt made by a court ... according to law, and charged in the commitment, as provided by law.

In other words, the writ of habeas corpus codified in AS 12.75 is not to be used as a writ of error (other than to test the court's jurisdiction).[15]

I acknowledge that the United States Supreme Court more recently adopted a substantially broader view of the common-law writ of habeas corpus in *Fay v. Noia.*[16] Justice Brennan, writing for the majority, rejected the notion that habeas corpus inquiry was traditionally limited to questions of jurisdiction.[17] Instead, Justice Brennan asserted

that "at the time that the Suspension Clause was written into our Federal Constitution ..., there was respectable common-law authority for the proposition that habeas [corpus] was available to remedy any kind of governmental restraint contrary to fundamental law"[18]—that is, as a means of collaterally attacking any criminal judgement that was imposed in violation of due process.

Justice Brennan's view of the common-law writ was vigorously contested at the time by Justice Harlan (writing for the minority in *Fay v. Noia*).[19] Since that time (1963), the view adopted by the *Fay v. Noia* majority has been criticized by scholars.[20] Justice Powell, concurring in *Schneckloth v. Bustamonte*[21], and joined by three other members of the court[22], labeled Justice Brennan's construction of the common-law writ a "revisionist view" of history.[23] Justice Powell declared that "recent scholarship has cast grave doubt on *Fay*'s version of the writ's historic function".[24]

Despite these criticisms, the Supreme Court has never disavowed what it said in *Fay v. Noia* about the scope of the common-law writ of habeas corpus. Thus, *Fay*'s interpretation of the common-law writ, though clouded, remains the controlling interpretation for purposes of federal constitutional law. But in the present appeal, this court must decide an issue of state constitutional law: What did the drafters of Alaska's Constitution intend when they wrote Article I, Section 13?

---

15. AS 12.75.020 and AS 12.75.110 carry forward the limitation on the scope of the writ that appeared in the 1913, 1933, and 1949 codifications of Alaska law. *See, e.g.,* CLA 1949, § 66–26–2:
    > Persons properly imprisoned or restrained by virtue of the legal judgment of a competent tribunal of civil or criminal jurisdiction, or by virtue of an execution regularly and lawfully issued upon such judgment or decree, shall not be allowed to prosecute the writ.

    and § 66–26–17:
    > But no court or judge, on the return of a writ of habeas corpus, has power to inquire into the legality or justice of any order, judgment, or process specified in section 66–26–2....

    These two sections mirrored similar provisions found in CLA 1913, §§ 1399 and 1414, and CLA 1933, §§ 4133 and 4151.

16. 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

17. *See* 372 U.S. at 404, 83 S.Ct. at 830.

18. 372 U.S. at 405, 83 S.Ct. at 831.

19. 372 U.S. at 448–463, 83 S.Ct. at 853–861.

20. *See LaFave and Israel,* § 27.1(b), Vol. 3, pp. 287–88.

21. 412 U.S. 218, 250, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854 (1973).

22. *See* 412 U.S. at 249–250, 93 S.Ct. at 2059.

23. *See* 412 U.S. at 252, 93 S.Ct. at 2060.

24. 412 U.S. at 253, 93 S.Ct. at 2061.

To answer this question, we need not try to assess the current validity or likely future of *Fay v. Noia*. It is sufficient to note that *Fay v. Noia* was decided in 1963—after the Alaska Constitution was drafted and adopted, and after the Alaska Legislature codified the writ of habeas corpus in AS 12.75. Whatever might be said about *Fay v. Noia*'s construction of the writ of habeas corpus, it is clear that *Fay* represents a sharp departure from the view of the writ espoused in the Supreme Court's earlier opinions, beginning with *Ex Parte Watkins* in 1830 and continuing through *United States v. Hayman* in 1952. It is this pre-*Fay* view of the writ that guided the drafters of Alaska law. I therefore conclude that Article I, Section 13 of the Alaska Constitution incorporates and guarantees the common-law writ of habeas corpus as described in pre-*Fay* jurisprudence. In 1974, the Alaska Supreme Court enacted a post-conviction relief rule—Criminal Rule 35(b), later renumbered as Criminal Rule 35.1. This rule gives criminal defendants the right to collaterally attack their convictions and sentences on a variety of grounds. One of the listed grounds for post-conviction relief is that the defendant's "conviction or sentence is ... subject to collateral attack upon any ground [formerly] available under any common law, statutory, or other writ [or] proceeding[.]"[25] And the rule itself declares that it is "intended to provide a standard procedure for accomplishing the objectives of all of the constitutional, statutory[,] or common law writs."[26]

That is, Criminal Rule 35.1 codifies not only the constitutionally guaranteed writ of *habeas corpus ad subjiciendum* but also the common-law writs of error (*coram nobis* and *coram vobis*) that authorized a limited collateral attack on the facts underlying a criminal conviction. Indeed, the scope of post-conviction relief available under Criminal Rule 35.1 exceeds what was available under the common-law writs; it rivals the scope of relief available under the statutory writ of habeas corpus enacted by the federal Congress.

To the extent that Criminal Rule 35.1 codifies the constitutionally guaranteed writ of habeas corpus, one could plausibly argue that the legislature is powerless to amend Criminal Rule 35.1 in such a manner as to prevent prisoners from pursuing this writ. That is, Article I, Section 13 of our state constitution may well prohibit the legislature from enacting a law that prevents a prisoner from requiring the government to produce the criminal judgement that justifies the prisoner's incarceration, or that prevents the prisoner from challenging the jurisdiction of the court which issued that judgement.

But Flanigan's case does not raise this issue. Flanigan is imprisoned because he was convicted of murder. There is no question that Flanigan is imprisoned by virtue of a criminal judgement issued by the superior court. And although Flanigan's petition for post-conviction relief raises a multitude of issues, he does not assert that the superior court lacked jurisdiction over him or lacked subject-matter jurisdiction over his offense. Thus, Flanigan's collateral attack on his conviction is not a petition for "writ of habeas corpus" as that phrase is used in Article I, Section 13 of the Alaska Constitution.

Because Flanigan's petition is not a petition for writ of habeas corpus, Article I, Section 13 does not guarantee him the right to pursue his petition. His right to collaterally attack his conviction on the various grounds alleged in his petition stems from court rule and from statute. And because his right derives from court rule and statute, the legislature ostensibly has the power to modify, limit, or even abolish that right.

I say "ostensibly" because I believe that, under certain circumstances, other provisions of our state constitution may limit the legislature's power in this area. But that debate is premature in Flanigan's case. The precise question presented in this appeal is whether Article I, Section 13 of the Alaska Constitution guarantees a criminal defendant the right to collaterally attack their conviction on the basis of alleged procedural and legal

**25.** Criminal Rule 35.1(a)(6), formerly Criminal Rule 35(b)(1)(F).

**26.** Criminal Rule 35.1(b), formerly Criminal Rule 35(b)(2).

errors committed in the trial court. For the reasons explained here, I conclude that the answer is "no". I note that the supreme courts of Oregon and Washington have reached this same conclusion, using similar reasoning.[27]

Accordingly, I join in the decision to uphold the superior court's dismissal of Flanigan's petition for post-conviction relief.

27. *See Petition of Runyan,* 121 Wash.2d 432, 853 P.2d 424 (1993); *Bartz v. State,* 314 Or. 353, 839 P.2d 217 (1992).