# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57675-9-II |
| Respondent, | |
| v. | |
| SABRA KAYE DANIELSON, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, A.C.J. — Sabra Danielson became eligible to have her drug possession conviction and her legal financial obligations (LFOs) reimbursed when our Supreme Court issued its decision in *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021). However, the trial court only refunded her for the portion of her LFOs that she paid in cash, but denied her reimbursement for community service hours she completed to pay off the LFOs pursuant to an LFO payment plan approved by the court. Danielson appeals the court's decision. We hold that (1) CrR 7.8 is the exclusive procedural means for seeking a refund and cancellation of *Blake* LFOs, (2) the State was not unjustly enriched at Danielson's expense, and (3) Danielson has not shown that denial of her request for reimbursement for community service hours violated due process or equal protection. We affirm.

FACTS

In 2003, Danielson pled guilty to unlawful possession of a controlled substance. The trial court sentenced her to 58 days of confinement with credit for 28 days served. The remaining 30 days were converted to 240 community service hours. The court found her to be indigent and imposed $1,060 in LFOs.[1]

Two years later, Danielson had completed her community service but still had to pay off the remainder of her LFOs. The trial court believed that Danielson completed a total of 243.5 community service hours, and converted the excess 3.5 hours to satisfy $25.06 toward her LFOs. Because of her financial situation, the court allowed her to pay off the LFOs with additional community service time worth $7.16 per hour. Ultimately, Danielson worked for an additional 15.5 hours for a total of $110.98 toward her LFOs.

In 2021, our Supreme Court decided *Blake*, which held that Washington's strict liability drug possession statute was unconstitutional. 197 Wn.2d at 183. In light of this decision, Danielson moved to vacate her conviction under CrR 7.8. She also requested a refund for her LFOs, including compensation for the community service work she completed toward paying those LFOs.

The trial court found that Danielson was entitled to reimbursement for the cash payments. However, it found that she was not entitled to reimbursement for the excess community service, reasoning that work could not form the basis of a claim for restitution for unjust enrichment. The court's order reads:

---

[1] This total included $100 for a deoxyribonucleic acid (DNA) collection fee, $350 for a court appointed attorney, $500 for a victim penalty assessment, and $110.00 for a court filing fee.

> 1. The conviction for unlawful possession of controlled substance is void and should be vacated.
>
> 2. Pursuant to *Nelson v Colorado*, 581 U.S. [128], 137 S. Ct. 1249, 197 L. Ed. 2d 611 (2017)[], the defendant is entitled to recovery from the state of all payments made towards LFO[]s imposed as a result of the vacated conviction. . . .
>
> 3. When a criminal conviction is invalidated by a reviewing court and no retrial will occur, is the State obliged to refund fees, court costs, and restitution exacted from the defendant upon, and as a consequence of, the conviction? Our answer is yes.
>
> 4. However, consistent with RAP 12.8 and *State v. Hecht*, 2 [Wn. App. 2d] 359, 367, 409 P.3d 1146 (2018), this applies only to "property transferred between the parties[."]

Clerk's Papers (CP) at 9.

Danielson appeals.

## ANALYSIS

I.      CrR 7.8

As an initial matter, the State argues that Danielson's claim may not be raised in a CrR 7.8 motion to vacate. It asserts that the "return of property in the form of cash for cash paid as recognized at common law and RAP 12.8, a claim for monetary compensation (or restitution based upon unjust enrichment) is civil in nature and may not be raised in a criminal case as relief from judgment or order under CrR 7.8." Br. of Resp't at 9 (footnote omitted). Danielson responds that CrR 7.8 is the sole mechanism by which the superior courts provide for relief from a criminal judgment or order. We agree with Danielson that CrR 7.8 is the correct and exclusive procedural means for asserting her claim for relief.

CrR 7.8 is the mechanism by which the superior courts provide relief from a criminal judgment or order. CrR 7.8 allows vacation of judgments on "[a]pplication . . . made by motion stating the grounds upon which relief is asked, and supported by affidavits setting forth a concise statement of the facts or errors upon which the motion is based." CrR 7.8(c)(1). Division One of this court recently held that CrR 7.8 is the exclusive procedural means by which to seek refund

and cancellation of superior court imposed *Blake* LFOs. *Civil Survival Project v. State*, 24 Wn. App. 2d 564, 578, 520 P.3d 1066 (2022), *review denied*, 2 Wn.3d 1011 (2023).

In *Civil Survival Project*, the court reasoned that CrR 7.8 "clearly applies to the reconsideration of constitutionally invalid convictions" because it "explicitly contemplates being used to address precisely this sort of issue: 'A defendant is entitled to relief under subsection (i) where the person . . . is serving a sentence *for a conviction under a statute determined to be void, invalid, or unconstitutional by [the courts]*.'" *Id.* at 578 (emphasis in original) (quoting CrR 7.8(c)(2)). We agree with the reasoning in *Civil Survival Project* and adopt it here.

We hold that CrR 7.8 is the correct and exclusive procedural means by which to seek refund and cancellation of superior court imposed *Blake* LFOs. [2]

II.    UNJUST ENRICHMENT

Danielson argues that she should be reimbursed because the State was unjustly enriched at her expense. She alleges that because she performed labor to satisfy a judgment, that labor conferred a benefit on her community and the State. We disagree.

In denying reimbursement to Danielson for her community service hours, the trial court based its decision on *Hecht*, 2 Wn. App. 2d 359. In that case, the defendant was convicted of patronizing a prostitute and felony harassment. *Id*. at 361-62. As part of his sentence, Hecht was required to attend an educational intervention,[3] pay LFOs, obtain an human immunodeficiency virus (HIV) test, and perform community service. *Id*. at 362. However, his conviction was

_____

[2] The State also argues that sovereign immunity bars Danielson from seeking relief under CrR 7.8. Because we hold that CrR 7.8 is the proper mechanism for hearing this claim, there is no civil suit involved and sovereign immunity is not implicated.

[3] *Hecht* uses the term "John School" to describe this educational intervention program, where those who solicit the services of prostitutes learn the impact of their actions, focusing on the experiences and harms of prostitution with hopes of deterring future solicitation.

reversed due to prosecutorial misconduct. *Id*. Hecht filed a motion under RAP 12.8[4] for restitution of court imposed financial obligations as well as his legal fees, deterioration of his emotional and physical health, and unwarranted community service and community supervision. *Id*. The trial court concluded that he was not entitled to the requested restitution. *Id*. at 363. Hecht challenged the decision on appeal. *Id*. at 366.

On appeal, Division One of this court applied principles from the *Restatement of Restitution* in analyzing the applicability of RAP 12.8 to Hecht's claim.[5] *Id*. at 367. RAP 12.8 reads:

> If a party [seeking restitution] has voluntarily or involuntarily partially or wholly satisfied a trial court decision which is modified by the appellate court, the trial court shall enter orders and authorize the issuance of process appropriate to restore to the party any property taken from that party, the value of the property, or in appropriate circumstances, provide restitution.

In analyzing the meaning of this provision, as well as other Restatement principles, the court concluded that Hecht was entitled to reimbursement for the amount he paid in satisfaction of his judgment and sentence: the LFOs, cost of the blood draw, and educational intervention tuition. *Id*. at 368. Relying on *Nelson v. Colorado*, 581 U.S. 128, 135-36, 137 S. Ct. 1249, 197 L. Ed. 2d 611 (2017), the court reasoned that a party unjustly enriched at the expense of another is required to make restitution, and when a criminal conviction is overturned, the State is obliged to refund

---

[4] While *Hecht* concerns a proceeding under RAP 12.8 rather than the correct mechanism, CrR 7.8, we recognize that the *Hecht* court did not have the benefit of *Civil Survival Project* concerning the exclusive procedural means by which to seek refund and cancellation of superior court imposed *Blake* LFOs.

[5] The court reasoned that while the *Restatement of Restitution* is civil law focused, as are the cases that advocate for its application in the RAP 12.8 context, the underlying criminal case had been dismissed, and Hecht's "civil in nature" claim for restitution under RAP 12.8 was the only remaining issue. *Hecht*, 2 Wn. App. 2d at 367. Therefore, the court determined that the *Restatement of Restitution* was applicable to the interpretation of RAP 12.8 in that case. *Id*.

fees and court costs as a consequence of that conviction because the State no longer has a legal claim to this property. *Id*. The court also concluded that this was the extent of the restitution owed:

> [Hecht] is not entitled to recover his legal fees, compensation for his community service and community supervision, or compensation for emotional and physical deterioration. While Hecht may have suffered these losses as consequences of his convictions, *they were not paid in satisfaction of his judgment and the State was not unjustly enriched by them*. Hecht's entitled restitution is the amount he paid, not the amount he claims to have lost as a result of his convictions.

*Id.* (emphasis added).

Here, while allowing reimbursement for cash Danielson paid, the trial court denied her reimbursement for community service hours worked. The court reasoned that the State is obliged to refund fees, court costs, and restitution exacted from the defendant upon and as a consequence of an invalidated conviction, but "consistent with RAP 12.8 and [*Hecht*, 2 Wn. App. 2d 359], this applies only to 'property transferred between the parties.'" CP at 9.

RAP 12.8 aside, the trial court denied the defendant in *Hecht* reimbursement for community service hours because (1) "they were not paid in satisfaction of his judgment" and (2) "the State was not unjustly enriched by them." 2 Wn. App. 2d at 368. The second criteria is not satisfied when applied to Danielson's case.

Unjust enrichment typically involves: "a benefit conferred upon the defendant by the plaintiff; an appreciation or knowledge by the defendant of the benefit; and the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Young v. Young*, 164 Wn.2d 477,

484, 191 P.3d 1258 (2008). Conferring a benefit is when a person "gives to the other possession of or some other interest in money, land, chattels, or choses in action, performs services beneficial to or at the request of the other, satisfies a debt or a duty of the other, or in any way adds to the other's security or advantage." RESTATEMENT (FIRST) OF RESTITUTION § 1 cmt. b (AM. L. INST. 1937).

Danielson's excess community service hours were not a benefit conferred upon the State because the services she performed were not beneficial to the State specifically. *See id.*; *Young*, 164 Wn.2d at 484. According to the record before this court, her community service was completed at two private nonprofit organizations: Lutheran Community Services and Port Angeles Food Bank. While these service hours were certainly beneficial to the community at large, there was no direct benefit to the State. Accordingly, the trial court did not err in denying Danielson reimbursement for her particular community service work under an unjust enrichment theory.

III. DUE PROCESS

Danielson argues that under the Due Process Clause of the Fourteenth Amendment, she has a fundamental right to monetary reimbursement for community service she performed to pay off her LFOs because her conviction was vacated. The State counters that there is no due process right to cash compensation for community service work. We conclude that Danielson has not shown that the Due Process Clause requires that she be reimbursed for her community service hours.

A. Legal Principles

The Due Process Clause of the Fourteenth Amendment to our United States Constitution provides that a state may not deprive persons of "life, liberty, or property" without providing them with "due process of law." U.S. CONST. amend. XIV, § 1. The guarantee of due process includes

7

a substantive component that forbids the government from infringing on certain fundamental liberty interests. *Reno v. Flores*, 507 U.S. 292, 301-02, 113 S. Ct. 1439, 123 L. Ed. 2d 1 (1993). We review constitutional issues de novo. *Bellevue Sch. Dist. v. E.S.*, 171 Wn.2d 695, 702, 257 P.3d 570 (2011).

B.      No Substantive Due Process Violation

Relying on *Nelson*, Danielson argues that she has a fundamental right to restoration. In *Nelson*, the Supreme Court addressed procedural due process and applied the *Mathews v. Eldridge*[6] test to Colorado's process for obtaining reimbursement of fees paid pursuant to overturned convictions. *Nelson*, 581 U.S. at 134-35. In addressing the private interests affected by the Colorado law, the Court explained that the petitioners "have an obvious interest in regaining the money they paid to Colorado" because once their "convictions were erased, the presumption of their innocence was restored." *Id.* at 135. The Court characterized the presumption of innocence as "'[A]xiomatic and elementary'" to the "foundation of our criminal law.'" *Id*. at 135-36 (quoting *Coffin v. United States*, 156 U.S. 432, 453, 15 S. Ct. 394, 39 L. Ed. 481 (1895)). As for Colorado's interest in the money, the Court explained that the state "has no interest in withholding from [petitioners] money to which the State currently has zero claim of right." *Nelson*, 581 U.S. at 139. The Court ultimately concluded that the Colorado law was procedurally deficient under the *Mathews* test. *Nelson*, 581 U.S. at 139.

First, Danielson raises a substantive due process argument asking us to conclude that the trial court's denial of reimbursement for hours worked to pay off LFOs violated a fundamental right without compelling justification. But *Nelson* performed a *procedural* due process analysis, so its reasoning does not support a *substantive* due process claim. 581 U.S. at 133-34. Although

---

[6] 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

the *Nelson* Court referred to a foundational principle in criminal law, it did not articulate a fundamental right associated with the reimbursement of funds after an overturned conviction. *Id*. Recognition of a private interest at stake in a procedural due process analysis does not create a fundamental right to reimbursement of funds for substantive due process purposes And Danielson cites to no other legal authority establishing a substantive due process right or common law right to monetary compensation for community service performed on a conviction that is later found unconstitutional. In general, when a party fails to present argument or analysis regarding a due process violation claim, we decline to address it. *See Rafn Co. v. Dep't of Lab. & Indus.*, 104 Wn. App. 947, 951, 17 P.3d 711 (2001).

Second, unlike *Nelson*, the issue before us does not relate to the State's retention of funds, but rather whether Danielson is entitled to cash compensation for community service performed for non-state entities to retire an LFO debt on her voided judgment and sentence. Therefore, even if *Nelson*'s procedural due process analyses applied to Danielson's substantive due process argument, *Nelson* does not go as far as it needs to go to support her due process violation claim.

IV.    EQUAL PROTECTION

Danielson argues that the trial court violated her right to equal protection by treating her differently than other defendants with *Blake* LFOs on the basis of her purported indigency. We disagree.

A.    Legal Principles

The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution guarantees that "persons similarly situated with respect to the legitimate purpose of the law receive like treatment." *Harmon v. McNutt*, 91 Wn.2d 126, 130, 587 P.2d 537 (1978). We

9

review constitutional challenges de novo. *State v. Shultz*, 138 Wn.2d 638, 643, 980 P.2d 1265 (1999).

In addressing equal protection claims, we first determine whether the individual bringing the claim is situated similarly to other persons. *State v. Osman*, 157 Wn.2d 474, 484, 139 P.3d 334 (2006). The individual bringing the claim bears the burden of establishing that they were treated disparately because they belong to a class of similarly situated people, and that intentional or purposeful discrimination drove the disparate treatment. *Id*.

Then, depending on the classification and rights involved, we apply one of three tests: strict scrutiny, intermediate scrutiny, or rational basis review. *State v. Hirschfelder*, 170 Wn.2d 536, 550, 242 P.3d 876 (2010).

> Suspect classifications, such as race, alienage, and national origin, are subject to strict scrutiny. "Strict scrutiny also applies to laws burdening fundamental rights or liberties." "Intermediate scrutiny applies only if the [state action] implicates both an important right and a semisuspect class not accountable for its status." Absent a fundamental right or suspect class, or an important right or semisuspect class, or an important right or semisuspect class, a law will receive rational basis review.

*Id.* (internal citations omitted) (internal quotation marks omitted) (quoting *Am. Legion Post No. 149 v. Dep't of Health*, 164 Wn.2d 570, 609, 192 P.3d 306 (2008)).[7]

B.      No Showing of Equal Protection Violation

Danielson argues that she is similarly situated to others who incurred *Blake* LFOs and that she was treated disparately because of her alleged indigence. In other words, Danielson argues that she satisfied her *Blake* LFOs through community service work because she was indigent, so

---

[7] *Osman* appears to muddy the waters on whether a party, to succeed in obtaining intermediate scrutiny review, must prove *either* membership in a semisuspect class, *or* threat to an important right. 157 Wn.2d at 484. As we reference here, *Hirschfelder*, requires a party to prove *both* membership in a semisuspect class *and* threat to an important right. 170 Wn.2d at 550. We follow *Hirschfelder* because it is the most recent guidance from our Supreme Court.

the trial court's denial of her request to be reimbursed for that community service work was due to her indigency, and that other *Blake* defendants who satisfied their LFOS with cash payments were made more whole by virtue of wealth. We disagree.

RCW 10.01.160(4) allows defendants who have "been ordered to pay costs" to "petition the sentencing court for remission of the payment of costs or of any unpaid portion thereof," and empowers the sentencing court, if satisfied payment poses a "manifest hardship" to the defendant, to "modify the method of payment." Thus, the plain language of the statute allowing for community service in lieu of paying LFOs does not hinge on indigency. Rather, one who is able to show "manifest hardship" may petition the sentencing court to allow remission of the payment or allow community service in lieu of payment.

Here, there is nothing in the record to show that only indigent defendants have had their LFOs converted to community service due to "manifest hardship." The record also does not support Danielson's argument that the determination of whether a *Blake* defendant will be reimbursed for their community service work turns on their wealth. There is no record that the trial court found Danielson indigent at the time the court allowed Danielson to perform community service in lieu of paying LFOs nor does the record show that the trial court found Danielson indigent at the time the court credited the community service performed toward partial payment of LFOs. Similarly, Danielson provides no support for her argument that only indigent persons performed community service in lieu of paying LFOs. *See DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

It is a reasonable proposition that some non-indigent people were allowed to satisfy their *Blake* LFOs through community service work and that some indigent people were able to satisfy all their *Blake* LFOs with cash payments. Indeed, the record shows that Danielson satisfied a portion of her LFO obligations with cash payments even after performing some community service. Therefore, Danielson fails to show that the trial court "classif[ied] [*Blake* defendants] according to their financial resources." *In re Pers. Restraint of Runyan*, 121 Wn.2d 432, 448, 853 P.2d 424 (1993).

As discussed above, to succeed in obtaining heightened scrutiny, Danielson must show both that the state action threatens a fundamental or important right, and that she is not a member of a suspect or semisuspect class. *Hirschfelder*, 170 Wn.2d at 550. Because she fails to show one of these two requirements, we apply a rational relationship or rational basis test.

In *Runyan*, our Supreme Court applied a rational basis review to RCW 10.73.090, the statute requiring that personal restraint petitions be filed within one year of a final judgment. 121 Wn.2d at 449. The court concluded that the statute was rationally related to a legitimate state interest because it was "a reasonable means for controlling the flow of postconviction relief petitions." *Id.* In other words, "[f]aced with a virtually unlimited universe of possible postconviction claims. *Id*.

Limiting reimbursement to only those LFOs satisfied by monetary payments to the State is a similarly rational means of determining and controlling the flow of reimbursement requests from defendants who have had a conviction overturned pursuant to *Blake*. As Division One of this court recently explained, "[t]he rippling impacts of [the *Blake*] decision have yet to be fully realized, let alone resolved, and will not likely be for many years." *Civil Survival Project*, 24 Wn. App. 2d at

12

568. "[I]t is possible that more than 100,000 individuals were affected" by the *Blake* decision.[8] *Id*. Faced with such a large number of potential claims for reimbursement, there is a rational relationship between providing reimbursement for LFO payments and limiting the flow of reimbursement claims only to those *Blake* defendants who satisfied their LFOs with definable monetary payments received by the State.

From a commonsense standpoint, the State has a reasonable interest in only reimbursing LFOs it actually received; community service work performed in lieu of LFOs did not directly benefit the State, nor is community service in lieu of paying LFOs as easily quantifiable as Danielson suggests. Thus, the trial court's action survives rational basis review, and Danielson's equal protection claim fails.

CONCLUSION

In conclusion, we hold that CrR 7.8 is the exclusive procedural means for seeking a refund and cancellation of *Blake* LFOs. We also hold that on these facts and arguments, Danielson has not shown that the State was unjustly enriched at Danielson's expense or that there was a due process or equal protection violation. We affirm the trial court.

---

[8] The number of individuals affected may be even larger: as of June 2023, it was estimated that "roughly 300,000 convictions are . . . linked to" the Blake Refund Bureau, a program launched by the Administrative Office of the Courts to handle reimbursement requests from *Blake* defendants. Matthew Smith, *Reviewing Blake decision impacts as WA prepares to payout millions*, FOX 13 SEATTLE (June 21, 2023 5:10 PM), https://www.fox13seattle.com/news/reviewing-blake-decision-impacts-as-wa-prepares-to-payout-millions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, A.C.J.

We concur:

_____
Glasgow, J.

_____
Price, J.